IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF INDIANA

PRO SE Complaint Filed Under the

Civil Rights Act, 42 U.S.C. § 1983

DUE PROCESS UNDER THE LAW

EQUAL PROTECTION

FILED
DISTRICT COURT
...APOLIS DIVISION

16 SEP 26 PM 12: 28

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

NANCY A. DAW,  **PRO SE**

and                                    Case Number **1:16** -cv- **2550** JMS -DKL

STEPHEN L. HOBACK,  **PRO SE**,      Plaintiffs

vs

CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY,      Defendant

PARTIES

Plaintiff:  NANCY A. DAW is a citizen of and resides at INDIANA

Plaintiff:  STEPHEN L. HOBACK is a citizen of and resides at INDIANA

Address:   4110 Ritterskamp Court

Indianapolis, Indiana 46250-2271

Defendant:  CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY

Incorporated Municipality in the State of INDIANA

Address:  **Corporation Counsel**

City-County Building, 1601

200 E. Washington St.

Indianapolis, IN 46204

## JURISDICTION and VENUE

A. This United States District Court of Southern Indiana has subject matter jurisdiction **Under the Civil Rights Act, 42 U.S.C. § 1983** and under 28 U.S.C. § **1331** and supplemental jurisdiction of the Indiana state law claims pursuant to 28 U.S.C. **§ 1367.**

B. Venue is proper under 28 U.S.C. **§ 1391** in that the claim alleged herein arose in and the location of the Defendants are in Marion County, Indiana, within the Southern District of Indiana.

## STATEMENT OF FIRST CLAIM

### (Due Process Under the Law)

**Statement of Who Violated Plaintiffs Rights:**

1. Plaintiffs' property rights were violated without adequate due process of law by the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY.

2. Plaintiffs' property rights were violated without adequate due process of law by and executed by the Director of the City of Indianapolis **Department** of Public Works (DPW), an official with policy-making authority for the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY.

3. Plaintiffs' property rights were violated without adequate due process of law by the Marion County Assessor is an official with policy-authority for the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY.

4. Plaintiffs' property rights were violated without adequate due process of law by

sub-contractors of the Indianapolis **Department** of Public Works (DPW) under the authority of the Director of the City of Indianapolis **Department** of Public Works (DPW), an official with policy-making authority for the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY.

**Statement of the Actions of Each Defendant Acting as an Official with Policy-making Authority for the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY:**

5.  The Plaintiffs' rights were violated by the taking of land and property from Lot # 7 in the 1958 Platted Dean Meadows Subdivision without adequate due process of law by and executed by the Director of the City of Indianapolis **Department** of Public Works (DPW), an official with policy-making authority for the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY.

6.  The Plaintiffs' Lot # 7 in the 1958 Platted Dean Meadows Subdivision was divided by DEED by the Marion County Assessor without adequate due process of law. The Marion County Assessor is an official with policy-authority for the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY.

7.  The Plaintiffs' Lot # 7 in the 1958 Platted Dean Meadows Subdivision was without adequate due process of law when Lot # 7 was subdivided by DEED by the action of the Indianapolis **Department** of Public Works (DPW) holds NO AUTHORITY to subdivide any Lot within a 1958 Platted Subdivision and especially, the 1958 Platted Subdivision Dean Meadows.

8.  The Plaintiffs' Lot # 7 in the 1958 Platted Dean Meadows Subdivision was without adequate due process of law when sub-contractors of the Indianapolis **Department** of Public Works (DPW) removed all valid and legally set Survey Markers from Lot # 7 in the 1958 Platted Dean Meadows Subdivision under the direction of Director of the City of Indianapolis **Department** of Public Works (DPW).

9.  The Plaintiffs' Lot # 7 in the 1958 Platted Dean Meadows Subdivision was without adequate due process of law when sub-contractors of the Indianapolis **Department** of Public Works (DPW) removed and destroyed all valid Property Interests including keeping the front section of the parcel, Lot # 7, as a Private, landscaped front garden which included trees, shrubs, rocks, boulders, and flowers in specific placements and in high grade special composition soil.  Said soil included WOOD CHIPS as a Storm Water Filtration System in a designated Environmentally Sensitive Area and a designated Flood Plain.

**When and the Date the Plaintiffs' Rights Were Violated by the Defendants:**

10.  September 29, 2014 beginning date of work on Destruction of property and land in Lot # 7 in the 1958 Platted Dean Meadows Subdivision by sub-contractors of the Indianapolis **Department** of Public Works (DPW) under the AUTHORITY of the Director of the City of Indianapolis **Department** of Public Works (DPW), an official with policy-making authority for the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY.

**Why They Did It?:**

14. The Plaintiffs have no knowledge as to why the Director of the City of Indianapolis **Department** of Public Works (DPW), an official with policy-making authority for the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY decided not to follow Indiana Code and the Municipal Revised Code of the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY as to the Municipal Ordinance Revised Code Sec. 691-143(b) which states "All permanently dead-ended streets shall be terminated by culs-de-sac."

15. The Plaintiffs have no knowledge as to why the Director of the City of Indianapolis **Department** of Public Works (DPW), an official with policy-making authority for the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY never accepted the Opinion of the Indiana Supreme Court in *Pulos v. James* (1973), 261 Ind. 279, 302 N.E.2d at 775, which states,

    "plats create property rights in the grantees that cannot be taken without due process of law and the payment of just compensation." 302 N.E.2d at 771.

16. The Plaintiffs have no knowledge as to why the Director of the City of Indianapolis **Department** of Public Works (DPW), an official with policy-making authority for the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY never accepted the Opinion of the Indiana Supreme Court in *Pulos v. James* (1973), 261 Ind. 279, 302 N.E.2d at 775, in which the Indiana Supreme Court stated that the Police Power of Re-Platting in a subdivision in the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY is in the

Domain of the Metropolitan Plan Commission which has designated the MPC Plat

Committee to be the final authority.

"In Indiana counties in which there exists a city of first class, the metropolitan plan commission of such county or the planning committee thereof if so designated by the commission, shall have the power and **authority** to vacate any plat or part thereof or approve replatting where such vacation or replatting does not affect any street, highway, alley or public easement, or where such public easement has been waived or released prior to the approval of the plan commission or the plat committee thereof. The vacation of a plat or any part thereof may include the vacation, change or amendment or any recorded covenant or restriction applying thereto which was contained in the original plat. Where such vacation or replatting includes the vacation or relocation of any street, highway, alley, public ground or way or part thereof, or any easement not released or waived by a public utility prior to the hearing, then *the approval of the metropolitan plan commission of such county or the plat committee thereof if so, designated, shall be obtained as a condition of validity prior to final approval by the board of public works of such county.*"

17. The Plaintiffs have no knowledge as to why the Director of the City of Indianapolis

   **Department** of Public Works (DPW), an official with policy-making authority for

   the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY

   never accepted The amendment to **Indiana Code § 36-7-4-700** which rendered the

   act applicable to cities of the first class and provided that in counties wherein such a

   city exists, **Indiana Code § 36-7-4-700,** the power and **authority** to vacate plats or

   parts thereof should vest in the Metropolitan Plan Commission of such county or the

   plat (planning) committee thereof if so designated by the commission. It further

   provides for the vacation of covenants or restrictions applying to subdivided real

   estate where such restrictions are contained in the recorded plat. Which includes the

   subdividing of valid residential real estate Lots in the 1958 approved Dean Meadows

   Subdivision of the Consolidated City of Indianapolis and Marion County. This

authority is vested in the Metropolitan Development Commission and the

Metropolitan Development Commission Plat Committee.

**Indiana Code § 36-7-4-700 700 Series—Subdivision Control**

18. The Plaintiffs have no knowledge as to why the Director of the City of Indianapolis

**Department** of Public Works (DPW), an official with policy-making authority for

the CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY

never accepted the Revised Code of the Consolidated City and County Sec. 731-324

## STATEMENT OF SECOND CLAIM

## EQUAL PROTECTION

The City of Indianapolis ("City") by and through its Department of Public Works ("DPW") determined, without legal authority, to reconstruct, resurface, widen and rebuild a narrow, loop-configured private driveway under the guise of constructing a PLATTED CUL-DE-SAC, which decision was irrational, wholly arbitrary and in violation of Indiana Code 36-1-3-6(a), The Home Rule Act.

19. Plaintiffs, as owners of a platted lot in Dean Meadows, a residential subdivision consisting of twelve (12) lots that was approved with a right-of way easement dedicated to the public for the use of a cul-de-sac street which was not constructed, have been intentionally treated differently from similarly situated owners of platted lots in Woodacre Section IV, a residential subdivision consisting of fourteen (14) lots that was approved with a right-of-way, dedicated to public use, for a cul-de-sac street which also was not constructed.  Both easements for cul-de-sac streets were statutorily dedicated to the public upon the recording of the approved plats by the Marion County Recorder; Dean Meadows Plat was recorded July 8, 1958 and Woodacre Section IV Plat was recorded March 8, 1988 (a corrected Plat was recorded May 27, 1988).

20. Plaintiffs are fee simple owners of Dean Meadows Lot No. 7 which abuts the permanently terminated vehicle turn around end of the platted cul-de-sac easement, "dedicated to the public for its use," designated as "Ritterskamp Court" on the

recorded 1958 plat; similarly situated persons are fee simple owners of Woodacre

Section IV Lots 59, 60, 61 & 62 which abut the permanently terminated vehicle turn

around end of the cul-de-sac easement designated as "Woodacre Court" on recorded

1988 plats.

21. Both platted culs-de-sac streets were not constructed within their respective

subdivisions; therefore, no public street exists in either of the two subdivisions.

Private driveways, not constructed to street standards and specifications, in Dean

Meadows and Woodacre Section IV platted subdivisions provide access to the

aforesaid subdivision lots.

22. As of September 1, 2011, the north branch of the Dean Meadows private driveway

provided sufficient access to Lot 6 and Lot No. 7, and the south branch of the private

driveway provided sufficient access to Lots 8, 9, and 10; this driveway configuration

was similar to the branching driveways in Woodacre Section IV which provide

access to Lots 59, 60, 61 & 62.

23. On October 20, 2011, City of Indianapolis Work Directive Change No. 2 for

Resurfacing in Pike & Washington Townships, Project No. RS-11-518 authorized

that "Woodacre Court – commencing at Woodacre Blvd N Dr and terminating at the

end of said court where two residential driveways begin – is to be added to the

[resurfacing] project scope, per DPW direction. The court is approximately 133

linear feet long and 19 feet wide with approximately 46 feet of irregular area at the

residential driveway termination of said Woodacre Ct. … The City of Indianapolis

Department of Public Works directed the (re)addition of Woodacre Ct to the

[resurfacing] project scope after the City's Assessors Office realized this street segment is not a private street as previously thought."

24. The City's 2011 Work Directive Change which authorized resurfacing of a linear segment of "Woodacre Court" did not require any change in the layout of the private driveways or any change in the layout of the platted cul-de-sac easement, and DPW allowed the owners of Lots 59, 60, 61 and 62 in Woodacre Section IV to maintain the current width and location of their private driveways, which are partially located within the platted cul-de-sac easement, and to retain fee simple ownership of their lots as platted.

25. Plaintiffs were intentionally treated much differently from Woodacre lot owners who were similarly circumstanced: after considering various alternatives, DPW determined that it needed to contract with the owners of Lots 5, 6, 9, 10 and 12 in Dean Meadows to purchase parts of their platted residential lots — which unauthorized resubdivision by deed did not transform parts of platted lots into public rights-of-way — for the purpose of resurfacing and widening the private driveway pretended to be a platted cul-de-sac; and DPW determined that it needed to prepare and adopt plans "to resurface Ritterskamp Court ... under Project Number ST-05-020" which plans included the unauthorized appropriation of a part of Plaintiffs Lot No.7, from which the asphalt concrete driveway was demolished and removed, which left nothing to resurface.

26. "The long-standing statutory dedication scheme in Indiana has been that the owner 'who plats a street and acknowledges the plat and has it approved and recorded grants to the municipality, in trust for the public, title to an easement for a street,

and no further assent or acceptance by the public is required so far as the grant is concerned.' *Interstate Iron & Steel Co. v. East Chicago*, 187 Ind. 506, 118 N.E. 958, 959 (1918) (emphasis added). …[I]t is the chain consisting of (1) platting of a street, (2) acknowledgment, (3) proper municipal approval, and (4) recording which "grant[ ] to the municipality, in trust for the *public*, title to an easement for a street." *Id.* (emphasis added). Once this chain of events has transpired, the street has been dedicated for public use. *Beaman v. Smith*, 685 N.E.2d 143, 147 (Ind. Ct. App. 1997).

27. August 28, 2012 "Dear Resident" letter from Natalie Derrickson, Outreach Coordinator, DPW stated, "After receiving neighborhood input, DPW has determined that the proper course of action to be to maintain the current roadway area [the current "roadway area" did not include Lot No. 7 due to Plaintiffs demolition and removal of asphalt concrete] and widen the roadway, where appropriate, to accommodate solid waste trucks." No project number was referenced.

28. March 8, 2013 Plaintiffs sent an email request for information "RE: ST-05-020 Public Records" to the City Board of Public Works, including DPW Director Lori B. Miser, Board chairperson.   Plaintiffs' City-County Councillor, the only City official who provided assistance, forwarded her copy of Lori Miser's response: "Board of Public Works members and others, DPW will take care of this.  This is an on-going issue that we have been working on for some time."

29. A September 25, 2014 City of Indianapolis Office of Corporation Counsel letter regarding "Ritterskamp Court Reconstruction" [with No project number] states, "DPW is reconstructing a portion of Ritterskamp Court.  In preparation for

reconstruction, the City acquired property from adjacent landowners, both by donation and DPW's power of eminent domain." DPW has no power of eminent domain; the General Assembly has delegated the power of eminent domain to the Board of Public Works. See Ind. Code 32-24-2 *et seq.*

30. Reconstruction projects, including resurfacing, widening and rebuilding projects, in Marion County are governed by Ind. Code § 36-9-6.5 *et seq.* which provides that the Board of Public Works "shall adopt a resolution of necessity of the project and the purpose of the department to proceed with it. The board, as a part of the resolution, shall adopt the plans and specifications proposed for the entire project, and shall determine the estimated cost of all work and all acquisitions necessary to carry out the project." There is no Board resolution for reconstruction, resurfacing, widening or rebuilding of "Ritterskamp Court."

31. In 2014, City DPW Contract Change Orders under Project RS-13-003, Resurfacing & Related Items in Center and Washington Township, approved by DPW Director Lori B. Miser, directed that "Ritterskamp Court" be added to the contract as of August 13, 2014, and that "one (1) 2' x 2' concrete structure" [replacement for beehive drainage structure removed by DPW from Lot No. 7 in 2009] be added to the contract as of November 12, 2014.

32. By broadening the classification of "others similarly situated" to include the fee simple owners of platted lots which abut vehicle turn around ends of platted cul-de-sac streets which were constructed and accepted for maintenance purposes by the Board of Public Works, Plaintiffs were intentionally treated differently, in that they have been deprived of legal access to a public street and deprived of the use of a cul-

de-sac street as a cul-de-sac street. All other lot owners similarly situated have not been deprived of their rights to the use of a street as a street. There is no rational basis for the disparate treatment dispensed by DPW.

33. "The sale of lots implies that the purchaser shall have the use of the street as a street, and his rights are not confined to the space immediately in front of the ground bought by him, but extend to the street as it appears on the plat. It would be of little benefit to the purchaser to confine his rights to the narrow limits of the street immediately adjoining his lot, and the law does not circumscribe it within such narrow bounds. Little good would it do a purchaser to have an open street directly in front of him but blocked on either side. The law goes much beyond our statement, for it entitles the owner to all the streets and ways as such laid out upon the plat by which he purchases. So runs the great current of judicial opinion. *Rowan v. Town of Portland*, 8 B. Mon. 232; *Trustees of Augusta v. Perkins*, 8 B. Mon. 207; *City of Winona v. Huff*, 11 Minn. 119; *Huber v. Gazley*, 18 Ohio, 18; *Town of Derby v. Alling*, 40 Conn. 410; *Moale v. Mayor, etc.*, 5 Md. 314. This principle is recognized in *City of Logansport v. Dunn*, 8 Ind. 378, and in *City of Evansville v. Evans*, 37 Ind. 229, vide p. 236." *City of Indianapolis v. Kingsbury* (1884), 101 Ind. 200, 212.

34. Underlying the City's decision to treat Plaintiffs differently from other subdivision lot owners was increasing animus towards Plaintiffs who previously believed that City officials must have documentation to support their assertions that the Dean Meadows private driveway was a legal public street, but came to realize, after years of fruitless searching, that no supporting documentation existed, and that they had been misled.

35. The City's motivation to illegally resubdivide platted land and to insist that a narrow, loop-configured private driveway was a public cul-de-sac street was twofold: a desire to conceal the fact that no legal cul-de-sac street was constructed in accordance with the plat, which was a violation of subdivision control ordinances, and a desire to destroy and cause ruination to Plaintiffs' tree-covered, wildlife-friendly "front garden."

36. After "receiving neighborhood input" and considering opinions from corporation counsel, DPW engineers and employees, with the exception of Planning and Zoning staff, DPWs decisions to excavate and pave over a huge chunk of Plaintiffs' platted residential lot were spiteful efforts to "get them" for reasons wholly unrelated to any legitimate state objective. No exactions in addition to the dedicated easement for the cul-de-sac were required by law, or were necessary for the public health, safety, comfort, morals and general welfare of the citizens of Marion County.

37. In February 2008, DPW Solid Waste Assistant Administrator Shaun Brock speciously described the Dean Meadows private driveway as "a narrow, one-lane street that has a fairly sharp curve.  It's essentially a cul-de-sac with a very large median in the middle.  The problem with this street is that it's so narrow and has several large rocks and warning signs along the edge that it's not especially safe to take a large trash truck around the curve with snow on the ground.  The risk of damaging the median, a sign, a mailbox or a trash truck is fairly high."

38. In addition to perpetuating the "cul-de-sac" myth, City officials, both alone and in cooperation with Marion County Health Department officials, targeted Lot No. 7 for ordinance violations; a few for "Large Rubbish & Junk or Trash" and the majority of

violations were for "High Weeds & Grass." Multiple notices of violations were issued to Plaintiffs for allowing environmental public nuisances to exist: vegetation on private property that is abandoned, neglected, disregarded or not cut, mown, or otherwise removed and that has attained a height of twelve (12) inches or more. Revised Code Sec. 575-2(1).

39. To reduce and eliminate soil erosion problems on their steep front-yard hill that had been sparsely covered by summer grasses; a steep hill which is designated an Environmentally Sensitive Area in City's Comprehensive Plan, Plaintiffs replaced lawn turf with trees, flowers, woodchips and Starbucks coffee grounds.

40. Plaintiffs have expended much time and energy defending City citations for planting of small trees and flowers, which the City defines as vegetation that has attained a height of twelve (12) inches or more, at a formal hearing before Marion Superior Environmental Court F12, at an "informal hearing" at a DPW office attended by corporation counsel, and at an administrative hearing at the former department of code enforcement, attended by corporation counsel.

41. May 2008, City DPW contractors installed a beehive structure upon Plaintiff's steep front-yard hill; dozens of email requests later, City corporation counsel prepared a Right of Entry Agreement in April 2009 which granted City access to Lot 7 "to remove one beehive drainage structure." The work completed under this Agreement included excavation of a beehive drainage structure and removal of said structure from the Real Estate, relocating to existing City right-of-way if conditions permitted.

42. A City contracted Republic Services garbage truck intentionally damaged young trees growing alongside the private driveway, as confirmed by a driver who told one

of the Plaintiffs that he did not like tree branches growing close to the driveway. Notice of Tort Claim filed with the City on April 9, 2010 regarding 2009 garbage truck damage to the trunks of Bur Oak and English Walnut trees went unanswered; the trees survived.

43. Indiana statutes and City ordinances confirmed the Dean Meadows Plat was controlling authority and not City DPW; therefore, Plaintiffs exercised their constitutionally protected right to exclude the public from Lot No. 7 in Dean Meadows on September 1, 2011.  Summoned by outraged neighbors, IMPD officers responded to investigate log boundary markers reported to be blocking access to a public road; after consulting with City Corporation Counsel by phone, IMPD officers informed neighbors that Plaintiffs had a legal right to deny public access to Plaintiffs' private driveway.

44. According to public records, on 09-14-11 "DPW responded to the scene and will remove a large amount of debris that was put out in front of the residence by the homeowners."  DPW employee Justin Hancock was in the process of removing boundary logs from Lot No. 7 when Plaintiffs stopped him and explained the situation. Hancock then helped Plaintiffs put the logs back in place.

45. In June 2013, the Office of the Marion County Surveyor provided one 1996 record which reported that in response to an approved request for "R/W staked from Dean Rd to end of cul-de-sac at Ritterscamp Ct." from an Inspector at DCAM [the predecessor to Department of Code Enforcement], David Pruett, PLS [technical supervisor who died at age 53 in September 2008] completed a Report of Survey which included a "topo survey of the cul-de-sac" the results of which revealed "the

existing travelled, paved way is not inside the platted R/W." The June 4, 1996 report confirmed "[t]he platted cul-de-sac was staked, marked, painted in the field," DCAM inspector Owens was present to view the survey, talk with an unidentified landowner, and was provided a draft of the topo survey, so no memo was sent. The report concludes: "The crew believes there are indications this survey may be in court, and a dressed-up survey drawing may be required." This 1996 Survey Report confirms that NO public CUL-DE-SAC street existed in Dean Meadows.

46. Subsequent research revealed "1. The existing circular roadway was constructed as a construction roadway and was intended to be removed and replaced with a cul-de-sac in accordance with the original subdivision plat. This work was never performed and as a result the existing roadway lies on private property for much of the circular length. 2. One property owner has blocked off the roadway and the City has no legal recourse to have the roadway opened as it is on private property. 3. The residents desire to maintain the circular roadway configuration as opposed to a cul-de-sac and the City desires to maintain the existing configuration as opposed to reconstructing the entire circular portion of the roadway." November 2011 letter from United Consulting.

## RELIEF REQUESTED

## INJUNCTION

Plaintiffs request injunctive relief to prevent City officials from allowing public invitees to trespass upon the encroaching 16-foot wide, curved asphalt concrete private driveway

constructed by a City contractor in the vicinity of a prior section of asphalt concrete private driveway which was demolished with a sledgehammer and removed by Nancy A. Daw during the summer of 2012; to prevent City officials from designating Plaintiffs' illegally resubdivided front-yard property as a public right-of-way and/or public Cul-de-sac; to prevent City from issuing flora permits to neighbors who have threatened to cut Plaintiffs trees and to prevent further trespass upon the entirety of Lot No. 7, including the area located within the purported "Median " maintained by McPherson and Thomas.

"Selvia contends that 'the trial court erred in granting the permanent injunction without finding that Reitmeyer had no adequate remedy at law.' The law is well-settled that an injunction is a proper remedy to prevent a continued trespass. *Harris v. Krekler* (1943), 113 Ind. App. 190, 46 N.E.2d 267 *(transfer denied)*; *Evans v. Shephard* (1924), 81 Ind. App. 147, 142 N.E. 730; *Fisher v. Carey* (1918), 67 Ind. App. 438, 119 N.E. 376." *Selvia v. Reitmeyer*, 295 N.E.2d 869, 875 (Ind. Ct. App. 1973).


### JURISDICTION


C. This United States District Court of Southern Indiana has subject matter jurisdiction **Under the Civil Rights Act, 42 U.S.C. § 1983** and under 28 U.S.C. § **1331** and supplemental jurisdiction of the Indiana state law claims pursuant to 28 U.S.C. § **1367.**

D. Venue is proper under 28 U.S.C. § 1391 in that the claim alleged herein arose in and the location of the Defendants are in Marion County, Indiana, within the Southern District of Indiana.

E. The amount of money at stake in this case (not counting interest and costs) is $ 700,000 (Seven Hundred Thousand Dollars and no cents).  To install the PLATTED CUL-DE-SAC, remove Loop Private Driveway, RESTORE the Lot # 7, as a Private, landscaped front garden which included trees, shrubs, rocks, boulders, and flowers in specific placements and in high grade special composition soil.  Said soil included WOOD CHIPS as a Storm Water Filtration System in a designated Environmentally Sensitive Area and a designated Flood Plain.

## RELIEF REQUESTED

## INJUNCTION

F. Plaintiffs request injunctive relief to prevent City officials from allowing public invitees to trespass upon the encroaching 16-foot wide, curved asphalt concrete private driveway constructed by a City contractor in the vicinity of a prior section of asphalt concrete private driveway which was demolished with a sledgehammer and removed by Nancy A. Daw during the summer of 2012;  to prevent City officials from  designating Plaintiffs' illegally resubdivided  front-yard property as a public right-of-way and/or public Cul-de-sac; to prevent City from issuing flora permits to neighbors who have threatened to cut Plaintiffs trees and to prevent further trespass upon the entirety of Lot No. 7, including the area located within the purported "Median" " maintained by McPherson and Thomas".

# RELIEF REQUESTED

**Time and Place of Loss and Extent of Loss:**  On September 10, 2014, DPW recorded a VOID

Judgment in the Office of the Marion County Recorder, which act slandered the title to Lot No.

7  in Dean Meadows, 4110 Ritterskamp Court.  On September 29, 2014, Calumet Civil

Contractors, under the direction & control of DPW, trespassed upon Lot No. 7 in Dean Meadows

and initiated the demolition, destruction, excavation and unauthorized control of property, both

real & personal; damages continued accruing throughout October 2014. Damages for the loss of

use of real property are ongoing; impervious asphaltic concrete deposited upon the front yard of

Lot No. 7  is a trespass, a nuisance, and it destroyed a storm water filtering and detainment

facility composed of  woodchips, Starbucks coffee grounds and topsoil.  Personal property items

over which Calumet and the City exercised unauthorized control, with the intent to deprive Lot

No. 7 landowners of their use and value  include a myriad of landscaping boulders and large

rocks, numerous upright logs, and three (3) 24" steel rebar Retracement Survey monuments, each

with a substantial plastic cap permanently affixed showing the registered land surveyor's

surname and professional license number, which had marked the curved west boundary line of

Lot No. 7 in Dean Meadows;  49 red 12" brickface patio blocks, three (3) lawn chairs, one (1)

glass-topped lawn table, numerous lawn decorations, six (6) solar path lights, two (2) green

Starbucks patio umbrellas, one (1) large pink mailbox, and four (4) No Trespassing

signs.  Concrete drainage structures trespass upon Lot No. 7.

Replacement of Lot # 7, as a Private, landscaped front garden which included trees, shrubs,

rocks, boulders, and flowers in specific placements and in high grade special composition soil.

Said soil included WOOD CHIPS as a Storm Water Filtration System in a designated

Environmentally Sensitive Area and a designated Flood Plain.


## RELIEF REQUESTED


**Amount of damages sought**: Due to the fact that the City continues to exert unauthorized

control over the front yard of Lot No. 7 in Dean Meadows, the full extent of damages has not

been ascertained.  DPW's deliberate destruction of Lot No. 7 property has resulted in Damages

which  include, but are not limited to, Loss of the Use of Real Property, Loss of numerous

Sycamore, Oak, Ash, Black Walnut and Maple trees, arborvitae and yew bushes, one White Pine,

one River Birch and damage to roots and branches of additional trees; Loss of a myriad of

landscaping boulders & large rocks, which have sentimental value; Loss of multiple truckloads

of natural, seasoned, hardwood woodchips, several hundreds of pounds of top soil & many

hundreds of pounds of Starbucks coffee grounds, which functioned as a storm water filter &

detainment facility; and Loss of "numerous objects" of personal property specified above.

Damages include expenses for: Removal of many tons of trespassing limestone gravel and the

thick layer of asphaltic concrete covering the gravel; Removal of a large concrete drainage pipe

which trespasses underground into the front yard hill of Lot No.7; and Removal of a concrete

drainage structure installed in the same location where a "beehive structure" had been installed in

2008 and removed in 2009 by DPW. Damages include expenses to obtain a new Retracement

Land Survey, which would include replacement of three (3) survey monuments. Damages for

interference with an abutting landowner's right to have the CUL-DE-SAC street constructed &

maintained.

Respectfully Submitted,

*Nancy A. Daw, Pro Se*

Stephen L. Hoback, *Pro Se*                I
4110 Riiterskamp Court
Indianapolis, IN 46250-2271
Phone: (317) 567-1390
Email:  slhoback@ymail.com

## CERTICATE OF SERVICE

We hereby state that we have served this complaint to the Consolidated City of

Indianapolis and Marion County via HAND DELIVERY this 26th Day of September, 2016.

The Delivery was to designated representative at:

**Corporation Counsel**

City-County Building, 1601

200 E. Washington St.

Indianapolis, IN 46204

## *PRO SE STANDARDS FOR COMPLAINTS*

The notice pleading standard is designed to ensure that the complaint will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

The Supreme Court has held that pro se complaints are subject to "less stringent standards than formal pleadings drafted by lawyers" and should be liberally construed in the plaintiff's favor. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accord *Erickson v. Pardus*, 127 S. Ct. 2197 (2007). District courts should read the pleadings of a pro se plaintiff "liberally" and "interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Accord *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). However, pro se status does not exempt a party from compliance with procedural rules. *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).


NANCY A. DAW, ***PRO SE***                    STEPHEN L. HOBACK, ***PRO SE***