UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NANCY A. DAW,<br>STEPHEN L. HOBACK,<br><br>    Plaintiffs,<br><br>vs.<br><br>CONSOLIDATED CITY OF<br>INDIANAPOLIS AND MARION COUNTY,<br><br>    Defendant. | No. 1:16-cv-02550-JMS-DKL |

# **ORDER**

  This case arises from a dispute between *pro se* Plaintiffs Nancy Daw and Stephen Hoback (collectively "Plaintiffs") and Defendants Marion County and the City of Indianapolis (collectively "Defendants") regarding a portion of Plaintiffs' property. Defendants acquired a portion of Plaintiffs' property via a condemnation action in Indiana state court. Plaintiffs allege that this acquisition occurred in violation of their rights under the Due Process and Equal Protection Clauses of the United States Constitution. They filed the instant suit, requesting compensatory and injunctive relief under 42 U.S.C. § 1983. Defendants have moved for judgment on the pleadings, which Plaintiffs oppose. For the reasons described below, the Court grants Defendants' Motion and dismisses Plaintiffs' Complaint without prejudice.

# I.
## BACKGROUND

Plaintiffs reside at 4110 Ritterskamp Court in Indianapolis, Indiana, and a portion of that property is the subject of the current dispute between Plaintiffs and Defendants.[1] [Filing No. 1.] The subject property is "Lot 7" in the 1958-platted Dean Meadows subdivision. [Filing No. 1 at 3.] Plaintiffs received a letter from the Indianapolis Department of Public Works ("DPW") dated August 28, 2012, informing them that, concerning Ritterskamp Court, DPW determined that it was necessary to "widen the roadway, where appropriate, to accommodate solid waste trucks." [Filing No. 1 at 11.] This project included the "appropriation of a part of Plaintiffs [sic] Lot No. 7," along with several other neighboring lots. [Filing No. 1 at 10.] On March 8, 2013, Plaintiffs sent an email requesting information regarding the project to the City Board of Public Works, including to DPW Director Lori B. Miser. [Filing No. 1 at 11.] Plaintiffs' City-County Councillor forwarded to Plaintiffs Ms. Miser's response, in which she stated, "Board of Public Works members and others, DPW will take care of this. This is an on-going issue that we have been working on for some time." [Filing No. 1 at 11.]

On May 29, 2013, the City of Indianapolis filed a Complaint for the Appropriation of Real Estate regarding the subject portion of Plaintiffs' Lot 7.[2] [Filing No. 17-1.] According to the written judgment, all Defendants "were properly served with summons and notice as required by

---

[1] The Court notes at the outset that the factual allegations contained in Plaintiffs' Complaint are difficult to understand and often intertwined with legal conclusions. Particularly because the Plaintiffs are proceeding *pro se*, the Court has made every effort to discern the factual allegations and construe them in the manner intended by Plaintiffs.

[2] This information is not contained within Plaintiffs' Complaint, but appears in an August 14, 2014 judgment issued by the Marion County Superior Court. The Court takes judicial notice of this judgment. *See U.S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) ("The district court may also take judicial notice of matters of public record.").

statute." [Filing No. 17-1 at 1.] The judgment states that on June 6, 2013, Ms. Daw and Mr. Hoback appeared as trustees of Blue Diamond Revocable Trust, another defendant in that action. [Filing No. 17-1 at 2.] The judgment also indicates that "[n]o Defendant filed timely objection to the appropriation of the real estate interest the Plaintiff seeks to acquire." [Filing No. 17-1 at 2.] On May 2, 2014, court-appointed appraisers filed a report stating that Defendants had sustained total damages of $7,500, and no party filed any exceptions to the appraisal. [Filing No. 17-1 at 2.] The court directed the City to deposit $7,500 with the Clerk of the Court, which it did on July 1, 2014. [Filing No. 17-1 at 2.] The court then decreed that the City holds a fee simple interest in the subject portion of real estate, and ordered that the defendants should recover $7,500 as total just compensation for the City's appropriation. [Filing No. 17-1 at 2-3.]

Plaintiffs allege that the road widening and resurfacing work began on September 29, 2014. [Filing No. 1 at 4.] They contend that subcontractors of DPW:

> …removed all valid and legally set Survey Markers from Lot #7, and removed and destroyed all valid Property Interests including keeping the front section of the parcel, Lot # 7, as a Private, landscaped front garden which included trees, shrubs, rocks, boulders, and flowers in specific placements and in high grade special composition soil. Said soil included WOOD CHIPS as a Storm Water Filtration System in a designated Environmentally Sensitive Area and a designated Flood Plain.

[Filing No. 1 at 4.]

Plaintiffs contend that the Woodacre Section IV subdivision, also situated within Marion County, is comprised of 14 lots with an easement for a cul-de-sac street that was never constructed. [Filing No. 1 at 8.] Plaintiffs allege that a resurfacing project was completed in the Woodacre subdivision without requiring "any change in the layout of the private driveways or any change in the layout of the platted cul-de-sac easement." [Filing No. 1 at 10.] Plaintiffs allege that they were treated differently than these similarly situated cul-de-sac residents. [Filing No. 1 at 10.]

3

Plaintiffs also make the following factual allegations:

- The Marion County Assessor and DPW divided Lot 7 by deed. [[Filing No. 1 at 3](#).]

- There was no Board of Public Works resolution regarding the reconstruction, resurfacing, widening, or rebuilding of Ritterskamp Court. [[Filing No. 1 at 12](#).]

- Plaintiffs have been deprived of legal access to a public street and deprived of the use of a cul-de-sac street as a cul-de-sac street. [[Filing No. 1 at 12](#).]

- "Underlying the City's decision to treat Plaintiffs differently from other subdivision lot owners was increasing animus towards Plaintiffs who previously believed that City officials must have documentation to support their assertion that the Dean Meadows private driveway was a legal public street, but came to realize, after years of fruitless searching, that no supporting documentation existed, and that they had been misled." [[Filing No. 1 at 13](#).]

- "The City's motivation to illegally resubdivide platted land and to insist that a narrow, loop-configured private driveway was a public cul-de-sac street was twofold: a desire to conceal the fact that no legal cul-de-sac street was constructed in accordance with the plat, which was a violation of subdivision control ordinances, and a desire to destroy and cause ruination to Plaintiffs' tree-covered, wildlife-friendly 'front garden.'" [[Filing No. 1 at 14](#).]

- "DPW's decision to excavate and pave over a huge chunk of Plaintiffs' platted residential lot were spiteful efforts to 'get them' for reasons wholly unrelated to any legitimate state objective." [[Filing No. 1 at 14](#).]

- "…City officials, both alone and in cooperation with Marion County Health officials, target Lot No. 7 for ordinance violations; a few for "Large Rubbish & Junk or Trash" and the majority of violations were for "High Weeds & Grass." Multiple notices of violations were issued to Plaintiffs for allowing environmental public nuisances to exist: vegetation on private property that is abandoned, neglected, disregarded nor not cut, mown, or otherwise removed and that has attained a height of twelve (12) inches or more." [[Filing No. 1 at 15](#).]

- "A City contracted Republic Services garbage truck intentionally damaged young trees growing alongside the private driveway, as confirmed by a driver who told one of the Plaintiffs that he did not like tree branches growing close to the driveway. Notice of Tort Claim filed with the City on April 9, 2010 regarding 2009 garbage truck damage went unanswered; the trees survived." [[Filing No. 1 at 16](#).]

4

Plaintiffs' Complaint alleges violations of the Due Process and Equal Protection Clauses of the United States Constitution and 42 U.S.C. § 1983. [Filing No. 1.] Defendants filed an Answer to the Complaint, [Filing No. 8], and presently pending before the Court is Defendants' Motion for Judgment on the Pleadings, [Filing No. 16]. Briefing on that Motion is complete, and it is now ripe for the Court's review.

## II.
### LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. Pro. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) is governed by the same standard that applies to a motion to dismiss under Rule 12(b)(6). *United States v. Wood,* 925 F.2d 1580, 1581 (7th Cir. 1991). A "court may consider only matters presented in the pleadings and must view the facts in the light most favorable to the nonmoving party." *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F. 2d 357, 358 (7th Cir. 1987) (citing *Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F. 2d 174, 177 n. 2 (7th Cir. 1986)). The Court should "take all well-pleaded allegations in the plaintiffs' pleadings to be true, and [should] view the facts and inferences to be drawn from those allegations in the light most favorable to the plaintiffs." *Republic Steel Corp.*, 785 F. 2d at 177 n. 2. However, "a court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "The documents a court may consider under Rule 12(c) include the complaint, the answer, and any written exhibits attached as exhibits [to either]."

5

*N. Indiana Gun & Outdoor Shows, Inc.* 163 F. 3d at 452, 452 (7th Cir. 1998) (citing Fed R. Civ. P. 10(c)). "A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that [the moving party] is entitled to judgment as a matter of law." *Karaganis,* 811 F. 2d at 358 (citing *Flora v. Home Fed. Savings & Loan Ass'n*, 685 F. 2d 209, 211 (7th Cir. 1982)).

The Court notes that "[a]llegations of a *pro se* complaint are held 'to less stringent standards than formal pleadings drafted by lawyers ...'" and "are liberally construed." *Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir.2001) (*quoting Haines v. Kerner,* 404 U.S. 519, 520 (1972)).

## III.
### DISCUSSION

Plaintiffs' Complaint alleges two violations, both constitutional: (1) the unlawful taking of property under the Due Process Clause; and (2) denial of Plaintiffs' rights under the Equal Protection Clause. Defendants have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that Plaintiffs have failed to plead plausible violations under both claims. [Filing No. 17.]

**A. Due Process Claim**

Defendants move for judgment on the pleadings regarding Plaintiffs' due process claim, arguing that Plaintiffs do not allege that they received inadequate process. [Filing No. 17 at 2.] Defendants contend that while Plaintiffs label their claim a due process violation, it is actually a mislabeled takings challenge. [Filing No. 17 at 2.] And, Defendants argue, Plaintiffs have failed to exhaust their administrative remedies, which they are required to do in order to meet the ripeness requirement to bring a claim. [Filing No. 17 at 2.] Plaintiffs respond that they have adequately

pleaded a due process violation, and they expressly disclaim bringing a takings claim. [Filing No. 20 at 12-16; Filing No. 20 at 21-26.]

The Fourteenth Amendment to the United States Constitution prohibits any State from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV. Ripeness is an element of justiciability, and it is a prerequisite to the exercise of a federal court's subject matter jurisdiction. *Sprint Spectrum L.P. v. City of Carmel,* 361 F.3d 998, 1002 (7th Cir. 2004). In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 186-87 (1985), the Supreme Court "articulated a special ripeness doctrine for constitutional property rights claims." *Forseth v. Village of Sussex,* 199 F.3d 363, 368, 372 (7th Cir. 2000). Under *Williamson County,* federal courts are barred from adjudicating federal takings and due process claims until the plaintiff has demonstrated that (1) he received a final decision from the relevant government entity; and (2) he has sought compensation through the procedures the state has provided for doing so. *See Lewis v. City of Jeffersonville, Ind.,* 2004 WL 1629741, at *4 (S.D. Ind. 2004) (citing *Forseth,* 199 F.3d at 372; *Williamson County,* 473 U.S. at 186-87). The label a plaintiff attaches to his claim—a failure to pay just compensation, an inverse condemnation, or a due process violation—does not matter, because the ripeness requirement applies to the substance of the allegations. *River Park v. City of Highland,* 23 F.3d 164, 167 (7th Cir. 1994).

Defendants contend that Plaintiffs have not exhausted their state court remedies, and they attach a state court judgment as evidence of the proceedings that have taken place. Plaintiffs' Complaint provides few factual allegations regarding what state court procedures they have utilized and what remedies they have sought. The Complaint alleges that the subject property was subdivided by deed, [Filing No. 1 at 3], and that no board resolution was adopted providing for the

7

reconstruction, resurfacing, widening, or rebuilding of Ritterskamp Court, [Filing No. 1 at 12]. Plaintiffs also cite to a letter sent by DPW dated August 28, 2012 informing Plaintiffs that, concerning Ritterskamp Court, DPW determined that it was necessary to "widen the roadway, where appropriate, to accommodate solid waste trucks." [Filing No. 1 at 11.]

But the Complaint does not specify when, how, or what type of condemnation proceedings were initiated against them; who initiated them; whether Plaintiffs received notice of or attended a hearing regarding the condemnation; whether Plaintiffs filed challenges to any condemnation action; whether Plaintiffs were offered or provided money as compensation for the taking of their property; the amount of any offered compensation; whether Plaintiffs challenged that amount; whether Plaintiffs accepted the compensation offered; or whether Plaintiffs appealed the condemnation or compensation. In short, absent the state court judgment attached to Defendants' Motion for Judgment on the Pleadings, the Court could have only vaguely surmised that a condemnation occurred at all.

This Court may adjudicate the parties' dispute only if it has jurisdiction to do so. Given the information contained in the Complaint, the Court cannot conclude that Plaintiffs have exhausted their state court remedies, and Plaintiffs have not contended here that they are otherwise excused from doing so. Therefore, the Court cannot determine that it has subject matter jurisdiction over this action, and the Complaint must be dismissed. Because the Court concludes that Plaintiffs could cure this defect through further pleading (or the exhaustion of state court remedies, if this has not occurred), and because the Plaintiffs have not yet amended their initial Complaint, the Court grants the dismissal without prejudice.

**B. Equal Protection Claim**

Plaintiffs also raise a claim under the Equal Protection Clause of the Fourteenth Amendment, again challenging Defendants' acquisition of the subject property. [Filing No. 1 at 8-17.] The *Williamson County* court was not faced with the question of whether the ripeness requirement that it imposed on takings and due process claims also applies to equal protection claims. *Williamson County*, 473 U.S. at 182 n. 4. In *Forseth*, the Seventh Circuit recognized that "*bona fide* equal protection claims arising from land-use decisions can be made independently from a takings claim and without being subject to *Williamson* ripeness." *Forseth*, 199 F.3d at 370. In other words, when a plaintiff brings an equal protection claim "in addition to a takings" claim, plaintiffs have raised a "legitimate equal protection claim to be considered on its merits," not subject to the *Williamson County* ripeness doctrine. *Hager v. City of West Peoria*, 84 F.3d 865 (7th Cir. 1996). The *Forseth* court concluded that:

> [a]bsent a fundamental right or a suspect class, to demonstrate a viable equal protection claim in the land-use context, the plaintiff must demonstrate 'governmental action wholly impossible to relate to legitimate governmental objectives.' *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995); *see also Olech v. Village of Willowbrook*, 160 F.3d 386, 387-88 (7th Cir. 1998); *Hager*, 84 F.3d at 872; *Unity Ventures*, 841 F.2d at 775 n. 2. A survey of this Circuit's previous holdings that maintained equal protection claims in the land use context, reveal that the *Esmail* standard was satisfied when the equal protection claim was based on: (1) the malicious conduct of a governmental agent, in other words, conduct that evidences a 'spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective,' *Esmail*, 53 F.3d at 180; or (2) circumstances, such as prayer for equitable relief and a 'claim [that] would evaporate if the [governmental body] treated everyone equally,' that sufficiently suggest that the plaintiff has not raised 'just a single takings claim with different disguises.' *Hager*, 84 F.3d at 870.

*Forseth*, 199 F.3d at 370-71. In other words, where a plaintiff alleges, for example, malicious treatment by government officials, that treatment becomes the basis for the equal protection claim.

Plaintiffs do not allege that they are members of a suspect class, and they do not allege the violation of any fundamental right aside from their property rights. So they are necessarily alleging

9

a "class of one" equal protection claim, and they appear to be doing so based on the allegedly malicious conduct of government officials. *See, e.g., Gruber v. Columbia City*, 2017 WL 766917 (W.D. Wis. 2017). However, even construing the *pro se* Complaint liberally, it is unclear from Plaintiffs' allegations what malicious treatment they allege they have suffered, and the Complaint does not allege enough facts to allow the Court to conclude whether Plaintiffs present a *bona fide* equal protection claim that is not subject to the *Williamson County* ripeness doctrine.

Plaintiffs allege that the City harbored "increasing animus towards Plaintiffs," [Filing No. 1 at 13], but without any indication of how that animus manifested or what the basis for it was. Plaintiffs allege that they were given numerous ordinance violations involving trash, rubbish, and high weeds and grass, [Filing No. 1 at 14], but the Complaint does not allege that those violations were improper, or how those ordinance violations either demonstrate or relate to Defendants' alleged desire to deprive Plaintiffs of a portion of their property. And the remainder of the possibly relevant allegations function more as legal conclusions than statements of fact:

- "The City's motivation to illegally resubdivide platted land and to insist that a narrow, loop-configured private driveway was a public cul-de-sac street was twofold: a desire to conceal the fact that no legal cul-de-sac street was constructed in accordance with the plat, which was a violation of subdivision control ordinances, and a desire to destroy and cause ruination to Plaintiffs' tree-covered, wildlife-friendly 'front garden,'" [Filing No. 1 at 14]; and

- "DPW's decision to excavate and pave over a huge chunk of Plaintiffs' platted residential lot were spiteful efforts to 'get them' for reasons wholly unrelated to any legitimate state objective," [Filing No. 1 at 14].

Compare these allegations to those, for example, in *Forseth*. There, among other contentions, the plaintiffs alleged that the President of the Village Board took actions to thwart the proposed development being built by the plaintiffs. *Forseth*, 199 F.3d at 366-67. The plaintiffs alleged that the President's family homestead property abutted their proposed development site, and in an effort to protect his own property, the President used his official position to condition the Village's

approval of the development on the requirement that the plaintiffs sell him a "buffer strip" of their land at far below the fair market value. *Id.* The plaintiffs conveyed the property based on the official's demands and later filed suit in federal court.

In this case, the Court cannot discern from Plaintiffs' Complaint what actions took place at the hands of government officials that allegedly constitute malicious conduct. Plaintiffs allege that they were issued an undisclosed number of ordinance violations. But the Court cannot conclude (particularly absent an allegation that the violations were somehow improper) that this supports a claim of malicious conduct. Plaintiffs appear to allege that Ritterskamp Court was improperly designated as a cul-de-sac, but they fail to offer any allegations as to why that designation matters, or how it was maliciously aimed at them. Plaintiffs also allege that a City-contracted garbage truck driver purposefully damaged their trees, but they fail to allege how that private party's conduct could be imputed to a City entity or official.

Plaintiffs also make several allegations that the Court simply does not understand. For example, Plaintiffs contend that they "have been deprived of legal access to a public street and deprived of the use of a cul-de-sac street as a cul-de-sac street." [Filing No. 1 at 12.] First, the Court understands Plaintiffs to have alleged that Ritterskamp Court was widened (and therefore still exists), so it is unclear how Plaintiffs have been deprived of access to a public street. Second, the Court understands Plaintiffs to allege that Ritterskamp Court is not a cul-de-sac, but a private drive, and therefore it is unclear how Plaintiffs have been deprived of the use of a cul-de-sac street as a cul-de-sac street.

From the facts alleged, the Court cannot discern whether Plaintiffs' equal protection claim is really "just a single takings claim with different disguises," and therefore subject to the

*Williamson County* ripeness requirement. Therefore, as with Plaintiffs' due process claims, the Court dismisses this claim without prejudice.

Since Plaintiffs have an opportunity to amend their Complaint, the Court notes, as has another district court in a similar case, that Plaintiffs should draft their Complaint "as if [they] are telling a story to people who know nothing about [their] situation." *Gruber*, 2017 WL 766917 at *6. Plaintiffs would be well served by reviewing the recent *Gruber* order, which lays out in detail for a *pro se* plaintiff the elements required to adequately plead due process and equal protection claims in this context. *Id.* at *6-7.

## IV.
### CONCLUSION

For the reasons described above, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings, [Filing No. 16], and **DISMISSES** Plaintiffs' Complaint, [Filing No. 1], without prejudice. Plaintiffs have **thirty days** to file an amended complaint if they intend to continue to pursue this action.

Date: June 1, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

NANCY A. DAW
4110 Ritterskamp Court
Indianapolis, IN 46250-2271

STEPHEN L. HOBACK
4110 Ritterskamp Court
Indianapolis, IN 46250-2271

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@btlmlaw.com

Adam Scott Willfond
OFFICE OF CORPORATION COUNSEL
adam.willfond@indy.gov

Benjamin J. Church
OFFICE OF CORPORATION COUNSEL
Benjamin.Church@indy.gov

Kathryn M. Box
OFFICE OF CORPORATION COUNSEL
kathryn.box@indy.gov

Thomas J.O. Moore
OFFICE OF CORPORATION COUNSEL
thomas.moore@indy.gov