UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NANCY A. DAW, STEPHEN L. HOBACK, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:16-cv-02550-JMS-DML ) |
| CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY, | ) ) ) ) |
| Defendant. | ) |

# **ORDER**

This case arises out of a property dispute between *pro se* Plaintiffs Nancy A. Daw and Stephen L. Hoback, ("Plaintiffs") and Defendant Consolidated City of Indianapolis and Marion County ("the City"). Plaintiffs allege that the City violated their procedural and substantive due process rights by acquiring a portion of their property by eminent domain to engage in a "public works project" in Plaintiffs' neighborhood. Plaintiffs' operative Second Amended Complaint, [Filing No. 42], is their third attempt at pleading a cognizable claim. Presently pending before the Court is the third motion filed by Defendants seeking final resolution of this matter: in this instance, a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [Filing No. 43.] For the reasons described below, the Court **DISMISSES** Plaintiffs' Second Amended Complaint pursuant to Fed. R. Civ. Pro. 12(b)(1), because the Court lacks subject matter jurisdiction over this matter.

## I.
### BACKGROUND

The following facts are taken from Plaintiffs' Second Amended Complaint, and where indicated, prior filings represented on the Court's docket. While these facts are not necessarily

objectively true, the Court accepts them as true, as it is required to do when considering a motion to dismiss.

Plaintiffs are the holders of title to Lot No. 7 in the Dean Meadows subdivision in Indianapolis, Indiana, and they reside in a dwelling located on that property, accessed by a cul-de-sac street called Ritterskamp Court. [Filing No. 42 at 5.] Plaintiffs allege that in or around 1958, when the subdivision was initially platted, the Marion County Plan Commission required that the developers of the Dean Meadows subdivision dedicate land for a public cul-de-sac street easement, and required that the developers grant a temporary driveway easement to owners of lots that abutted the cul-de-sac easement. [Filing No. 42 at 4.] A temporary driveway was constructed to provide a physical means of access to the abutting lots, and the developers were obligated to construct a permanent vehicular turnaround at the cul-de-sac upon the termination of the easement. [Filing No. 42 at 4.] The developers never did so. [Filing No. 42 at 4.]

In 2005, Plaintiffs hired a surveyor to complete a survey of their property. [Filing No. 42 at 5.] That survey indicated that the "private driveway" was located outside of the platted cul-de-sac easement and encroached on Lot Number 7.[1] [Filing No. 42 at 5.] At some point in 2012, Ms. Daw "demolished the asphalt pavement located upon Lot No. 7 with a sledgehammer, removed asphalt chunks to the vehicular turnaround area of the cul-de-sac easement, and filled the remaining void with topsoil, wood chips, and Starbucks coffee grounds." [Filing No. 42 at 6.] Sometime after the demolition of the asphalt, Lori Miser, the Director of Public Works for the City of Indianapolis, "decided to establish an asphalt private driveway, located outside of the vehicular turnaround of the cul-de-sac easement, as a public street." [Filing No. 42 at 2.] Ms. Miser

---

[1] Plaintiffs refer to Ritterskamp Court as both a "private driveway" and a "public street." The Court simply repeats Plaintiffs' nomenclature as it arises.

determined that this was "necessary for the general welfare of subdivision residents," and was "of utility and benefit to solid waste trucks."[2] [Filing No. 42 at 2.]

On May 29, 2013, the City of Indianapolis filed a Complaint in Marion County Superior Court for the Appropriation of Real Estate regarding a portion of Plaintiffs' Lot 7.[3] [Filing No. 17-1.] According to the written judgment issued in that matter, all Defendants "were properly served with summons and notice as required by statute." [Filing No. 17-1 at 1.] The judgment states that on June 6, 2013, Ms. Daw and Mr. Hoback appeared as trustees of Blue Diamond Revocable Trust, another defendant in that action. [Filing No. 17-1 at 2.] The judgment also indicates that "[n]o Defendant filed timely objection to the appropriation of the real estate interest the Plaintiff seeks to acquire." [Filing No. 17-1 at 2.] On May 2, 2014, court-appointed appraisers filed a report stating that the defendants had sustained total damages of $7,500, and no party filed any exceptions to the appraisal. [Filing No. 17-1 at 2.] The court directed the City to deposit $7,500 with the Clerk of the Court, which it did on July 1, 2014. [Filing No. 17-1 at 2.] The court then decreed that the City holds a fee simple interest in the subject portion of real estate, and

---

[2] In the interest of clarity, the Court notes that in their prior filings in this matter, Plaintiffs have described in somewhat more detail the circumstances surrounding this "public works" project. For example, in their initial complaint, Plaintiffs stated that they received a letter from the Indianapolis Department of Public Works ("DPW") dated August 28, 2012, informing them that, concerning Ritterskamp Court, DPW determined that it was necessary to "widen the roadway, where appropriate, to accommodate solid waste trucks." [Filing No. 1 at 11.] This project included the "appropriation of a part of Plaintiffs [sic] Lot No. 7," along with portions of several other neighboring lots. [Filing No. 1 at 10.]

[3] As noted in one of the Court's prior orders, specific details regarding the condemnation are not contained within Plaintiffs' Second Amended Complaint, but some details are included in an August 14, 2014 judgment issued by the Marion County Superior Court. The Court takes judicial notice of this judgment. See U.S. v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991) ("The district court may also take judicial notice of matters of public record.").

ordered that the defendants should recover $7,500 as total just compensation for the City's appropriation. [Filing No. 17-1 at 2-3.]

Plaintiffs filed their initial Complaint in this Court on September 26, 2016, [Filing No. 1], and this Court granted without prejudice the City's Motion for Judgment on the Pleadings as to that Complaint, [Filing No. 30]. Plaintiffs filed an Amended Complaint on June 29, 2017, [Filing No. 31], and this Court granted without prejudice the City's Motion to Dismiss that Amended Complaint, [Filing No. 41]. Plaintiffs have now filed their Second Amended Complaint, [Filing No. 42], and presently pending before the Court is the City's Motion to Dismiss, [Filing No. 43]. That Motion is now fully briefed and ripe for the Court's review.

## II.
### LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. Pro. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative

level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.
### DISCUSSION

Plaintiffs' Second Amended Complaint claims that the City violated Plaintiffs' rights to procedural and substantive due process. [Filing No. 44.] The Court notes here, as it has in its two prior orders dismissing without prejudice Plaintiffs' Complaint and First Amended Complaint, that it is difficult to discern the contours of the claims being raised by Plaintiffs. While Plaintiffs have made progress in paring down the allegations presented in the Second Amended Complaint, the Complaint remains confusing, and the allegations are often intertwined with legal conclusions and argument. As it has throughout these proceedings, the Court has made every effort to discern the factual allegations and construe them in the manner intended by Plaintiffs.

In this Second Amended Complaint, while Plaintiffs allege a violation as a result of the condemnation proceedings in state court, Plaintiffs focus the bulk of their due process claims on actions by the City that they allege were required prior to (or perhaps apart from) the condemnation hearing. Plaintiffs argue that the City conducted a replat of their subdivision by "chang[ing] the street layout" of Ritterskamp Court, and that prior to doing so, the City was required by state statute to submit an application requesting replat approval, provide published notice, and hold a hearing. [Filing No. 42 at 8.] Plaintiffs argue that the City's failure to comply with these procedural requirements "deprived Plaintiffs of their property without due process of law." [Filing No. 42 at 9.]

The City argues that Plaintiffs were afforded all of the process that was required—a condemnation hearing. [Filing No. 44 at 2-3.] The City contends that the statutes cited by

5

Plaintiffs regarding replatting procedures did not apply in this instance, but that even if they did, Plaintiffs did not suffer a deprivation of property as a result of the City's failure to abide by them. [Filing No. 44 at 2.] The City contends that any procedures prior to the condemnation hearing "do not implicate the due process clause because Plaintiffs' property would not have been taken following these hearings." [Filing No. 44 at 2.]

The Fourteenth Amendment to the United States Constitution prohibits any state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Plaintiffs' allegations center around the property located at 4117 Ritterskamp Court and appear to relate only to an alleged deprivation of real property. In order to raise either a procedural or substantive due process claim, Plaintiffs must identify an underlying protected property interest. *See Murphy v. Rychlowski*, 868 F.3d 561, 565 (7th Cir. 2017) (explaining that in evaluating a procedural due process claim, the Court must first determine "whether the plaintiff was deprived of a protected property interest") (citation omitted); *Bell v. City of Country Club Hills*, 841 F.3d 713, 720 (7th Cir. 2016) (stating "there can be no deprivation of property without procedural or substantive due process of law without an underlying property interest"). So the Court looks first to Plaintiffs' Second Amended Complaint to determine what property deprivation Plaintiffs allege they have suffered.[4]

### A. Deprivation of a Protected Property Interest

In this Second Amended Complaint, Plaintiffs are (at best) vague regarding the specific property deprivation they have allegedly suffered, but from their allegations, the Court must conclude that the property deprivation being alleged is the taking of a portion of Plaintiffs' real

---

[4] The specific property interest at stake also impacts the Court's determination as to the application of the *Rooker-Feldman* doctrine, as discussed in more detail below. Therefore, the Court addresses this issue before turning to the issue of standing.

property by eminent domain. While in prior complaints, Plaintiffs provided more detail regarding that property, Plaintiffs make only limited references to it in their latest pleading. Plaintiffs do refer to the condemnation proceeding in Indiana state court that was instituted against them and the Blue Diamond Revocable Trust (of which Ms. Daw and Mr. Hoback allege they were co-trustees), and the Court previously discussed the written judgment issued in that proceeding. [*See* Filing No. 17-1 at 2.] The state court entered judgment, holding that the City thereafter held a fee simple interest in a specified portion of Lot Number Seven in Dean Meadows—the property on Ritterskamp Court that is the subject of the instant lawsuit.

Plaintiffs instead refocus their discussion on the City's decision to "change the street layout," arguing that they suffered a property deprivation as a result of that decision. [Filing No. 42 at 8-9.] But Plaintiffs' Second Amended Complaint does not include any allegations that would allow the Court to conclude that the City's decisions regarding the "public works project" resulted in the deprivation of Plaintiffs' property. By Plaintiffs' own allegations, state court filings submitted by Plaintiffs throughout the course of this litigation, and the judgment judicially noticed by this Court, it was the condemnation proceeding in state court that resulted in the taking of Plaintiffs' property. Even assuming that a procedural violation occurred in the City's determinations regarding the road widening project, Plaintiffs simply have not pleaded that such a violation is causally related to the property deprivation of which they complain. The deprivation of their real property occurred as a result of the condemnation action, and that is the deprivation at issue here.

### B. Application of the *Rooker-Feldman* Doctrine

Having determined what specific property deprivation is at issue, the Court now turns to the question of whether it has subject matter jurisdiction to consider Plaintiffs' Second Amended Complaint.

As they did in their prior complaints, Plaintiffs acknowledge that they suffered a property deprivation as a result of a condemnation order entered against them. [Filing No. 42 at 9-11.] While Plaintiffs do not detail the circumstances or outcome of those proceedings, they do allege several procedural deficiencies in those proceedings, including that (1) the City did not name Ms. Daw or Mr. Hoback as defendant parties; (2) the state court did not grant their motions for a change of judge; (3) a hearing was not held on July 25, 2013, as scheduled; and (4) in a hearing that was held on July 25, 2013, the state court judge told Plaintiffs that they did not have standing. [Filing No. 42 at 10.] As a result of these alleged defects, Plaintiffs contend that the state court did not establish personal jurisdiction over them. [Filing No. 42 at 11.] They also claim that they "did not manifest any intention to treat the void judgment as valid, and they did not accept any benefits from the void judgment." [Filing No. 42 at 11.] Plaintiffs allege that the state court judgment is void, [Filing No. 42 at 10-11], and they ask this Court for declaratory relief voiding that state court judgment, and an award of damages, [Filing No. 42 at 13].

The *Rooker-Feldman* doctrine prohibits federal jurisdiction over claims seeking review of state court judgments "no matter how erroneous or unconstitutional the state court judgment may be." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (citation omitted). This doctrine "is jurisdictional in nature," *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 569 F.3d 667, 670 (7th Cir. 2009), and a court must raise it on its own if not raised by the parties in order to ensure that it has jurisdiction over the matter, *Carter v. AMC, LLC*, 645 F.3d 840, 842 (7th Cir. 2011). Application of the doctrine is limited to cases "brought by state-court losers complaining

of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005); *see also Kelley*, 548 F.3d at 603. In short, the doctrine prevents a party from effectively trying to appeal a state court decision to a federal district court. *Hukic v. Aurora Loan Services*, 588 F.3d 420, 431 (7th Cir. 2009). In determining whether the *Rooker-Feldman* doctrine applies, the "pivotal inquiry is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Long v. Shorebank Development Corporation,* 182 F.3d 548, 554 (7th Cir. 1999) (internal quotation and citation omitted).

The parties do not address this Court's jurisdiction or the *Rooker-Feldman* doctrine in their briefing, so the Court must do so *sua sponte*. Here, Plaintiffs specifically and explicitly challenge the validity of the state court judgment, asking this Court to declare it void. [Filing No. 42 at 13.] The state court issued a judgment against Plaintiffs, and they complain here of injuries (the deprivation of their property) caused by that judgment. They do not allege that the City failed to comply with the order or satisfy the judgment. Instead, Plaintiffs challenge the propriety and validity of the judgment itself. This is precisely what the *Rooker-Feldman* doctrine prohibits.[5] *See Exxon Mobil*, 544 U.S. at 284; *Hukic*, 588 F.3d at 431.

---

[5] That prohibition applies equally to instances when a plaintiff alleges procedural defects in the state court judgment, as Plaintiffs appear to here. *See Harold v. Steel*, 773 F.3d 884, 887 (7th Cir. 2014) (rejecting plaintiff's argument that the *Rooker-Feldman* doctrine does not apply to the procedures that state courts use to reach decisions, and concluding that "[t]his line of argument is embarrassed by the fact that *Rooker* itself arose from a contention that the state court (at the adverse litigant's instigation) had used constitutionally forbidden procedures to reach its judgment. Unless *Rooker* were to be overruled, there could not be a 'procedural exception' to the *Rooker–Feldman* doctrine.")

Plaintiffs attempt to avoid this outcome by reframing their injury, at least in part, as one suffered before or apart from the issuance of the state court judgment. But, as the Court described above, Plaintiffs' Second Amended Complaint itself acknowledges that the property deprivation alleged by Plaintiffs was caused by the state court judgment. And the Seventh Circuit has repeatedly held that "a plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) (citing *Hagerty v. Succession of Clement,* 749 F.2d 217, 220 (5th Cir. 1984), *cert. denied,* 474 U.S. 968 (1985); *accord Guess v. Board of Medical Examiners,* 967 F.2d 998, 1005 (4th Cir. 1992) ("Artificial attempts to redefine the relief sought are not sufficient to overcome the requirements of *Feldman*."); *Owens-Corning Fiberglas Corp. v. Moran,* 959 F.2d 634, 635 (7th Cir. 1992) (section 1983 does not automatically permit federal court to review state judicial decision); *Worldwide Church of God v. McNair,* 805 F.2d 888, 893 (9th Cir. 1986) (*Feldman* applies in § 1983 context); *Lynk v. LaPorte Superior Court,* 789 F.2d 554, 563 (7th Cir. 1986) (federal courts rebuff efforts to retry state suits in federal courts under section 1983)). Therefore, at the risk of repeating itself, the Court concludes that what is at issue is the state court judgment in the condemnation proceeding—not a series of challenges to decisions made by the City (or the property developers) dating back as far as 1958.

Therefore, the Court concludes that it lacks jurisdiction over this matter, and Plaintiffs' suit must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). *See, e.g., Mains v. Citibank, N.A.*, 852 F.3d 669, 678 (7th Cir.), *cert. denied,* 138 S. Ct. 227 (2017) ("[T]he right disposition, when the *Rooker-Feldman* doctrine applies, is an order under Fed. R. Civ. P. 12(b)(1) dismissing the suit for lack of subject-matter jurisdiction."). A dismissal with prejudice would be inappropriate, in part, "because such a dismissal may improperly prevent a litigant from refiling his complaint in

another court that does have jurisdiction." *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 751 (7th Cir. 2013). Therefore, the Court's dismissal is without prejudice to Plaintiffs refiling this action in a court that has jurisdiction over this matter, if any exists.

This dismissal without prejudice does not preclude this Court from issuing a final judgment in the case, and final judgment shall issue. *See, e.g., Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 875 (7th Cir. 2005) ("The test for finality is not whether the suit is dismissed with prejudice or without prejudice, on the merits or on a jurisdictional ground or on a procedural ground. ... The test is whether the district court has finished with the case."). The Court has allowed Plaintiffs two opportunities to amend and refile their complaint in this matter, and the same factual allegations in each establish that this Court lacks jurisdiction over this matter: Plaintiffs challenge the validity of a state court judgment. *See Am. Nat. Bank*, 406 F.3d at 875 (discussing finality of judgment in case dismissed without prejudice where the action "was infected with an incurable jurisdictional defect").

## IV.
### CONCLUSION

For the reasons described above, pursuant to Fed. R. Civ. P. 12(b)(1), the Court **DISMISSES** Plaintiffs' Second Amended Complaint [42], without prejudice to refiling in a court that has jurisdiction over this matter, if any exists. Accordingly, the Court **DENIES AS MOOT** the City's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Final judgment shall issue separately.

Date: 1/18/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

NANCY A. DAW
4110 Ritterskamp Court
Indianapolis, IN 46250-2271

STEPHEN L. HOBACK
4110 Ritterskamp Court
Indianapolis, IN 46250-2271

Thomas J.O. Moore
OFFICE OF CORPORATION COUNSEL
thomas.moore@indy.gov

Adam Scott Willfond
OFFICE OF CORPORATION COUNSEL
adam.willfond@indy.gov